ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JEFFREY BORNSTEIN (CABN 99358)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7289
    FAX: (415) 436-7234
    Jeffrey.bornstein@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ANDERSON ARIEL ROSALES, a/k/a Anderson Ariel Baca Rosales, <br><br> Defendant. | CASE NO. 3:24-cr-00011VC <br><br> **UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING** <br><br> Date: January 31, 2024 <br> Time: 1:00 p.m. <br> Court: Hon. Vincent Chhabria |

## I. OVERVIEW

The United States and the defendant, ANDERSON ARIEL ROSALES a/k/a Anderson Ariel Baca Rosales ("ROSALES"), jointly request that the Court accept the proposed plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). This case is part of the United States Attorney's Office's efforts to disrupt the fentanyl and methamphetamine open-air drug markets that exist in San Francisco's Tenderloin neighborhood (the Tenderloin) through a combination of enforcement and dispositions that prevent drug traffickers from returning to the Tenderloin. These efforts will take the form, as here, of the prosecution of street-level dealing where a defendant may not meet our criteria for a

traditional drug tracking case. Some of the factors we rely upon include, a defendant's criminal history, the defendant staying in pretrial detention, and agreeing to: an expedited prosecution, including waiving indictment, that will lead to a federal drug felony for drug trafficking and/or possession with intent to distribute, fentanyl or in some case other drugs including methamphetamine; a strict three-year stay-away order that immediately excludes convicted drug traffickers from returning to the Tenderloin and thus dissuades them from engaging in further drug trafficking; and in appropriate cases, a detainer by ICE. For the reasons set forth below, the United States and the defendant believe that a below-Guidelines sentence—accounting for the time served plus one day in this expedited prosecution—alongside the special search condition and the geographical restriction meet the statutory requirements of Section 3553(a).

## II. MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING

To advance the goal of this accelerated disposition, the parties jointly move the Court to proceed to sentencing without a presentence investigation report during the same hearing as the defendant's change of plea, or as shortly thereafter as is practicable. This will achieve the expedited proceeding contemplated by both parties. The Court may sentence without a presentence investigation report if it "finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553" and "explains its finding on the record." Fed. R. Crim. Proc. 32(c)(1)(A)(ii); *see also* Fed. R. Crim. P. 32(b)(1), U.S.S.G. §6A1.1, Crim. Local Rule 32-1(b). The government respectfully submits that the record here—the Information and Criminal Complaint, the Plea Agreement, and the parties' Sentencing Memoranda, all detailing the defendant's offense conduct, criminal and if appropriate immigration status and other factors relevant under § 3553—enable the Court to meaningfully exercise its sentencing authority under § 3553 and proceed to sentencing without the need for a presentence investigation report. The parties request that the Court explain its findings and the sufficiency of the record at time of sentence.

## III. APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY

The parties agree that the sentencing Guidelines should be calculated as follows:

a. Base Offense Level, U.S.S.G. §2D1.1:                                                          24
   Drug quantity based on 120 grams of fentanyl.

| | | | |
|---|---|---|---|
| b. | Acceptance of Responsibility: | | -3 |

If I meet the requirements of U.S.S.G. § 3E1.1, I may be entitled to a three-level reduction for acceptance of responsibility, provided that I forthrightly admit my guilt, cooperate with the Court and the Probation Office in any presentence investigation ordered by the Court, and continue to manifest an acceptance of responsibility through and including the time of sentencing.

| | | | |
|---|---|---|---|
| c. | Zero Point Offender Reduction | | -2 |
| d. | Adjusted Offense Level: | | 19 |
| e. | Guidelines Range 30-37 months (based on a Criminal History I) | | |

The defendant's criminal history has been determined by records obtained from the San Francisco District Attorney's Office, Superior Court records and an ICE record check. We have also obtained court records from the San Francisco Superior Court and there was a pretrial services criminal history report. A copy of his Criminal History Record (Rap Sheet) is filed under seal as Ex. 1. A copy of his Pre-Trial Services report is filed under seal as Ex. 2. Mr. Rosales admits that he does not have legal status and that he entered this country illegally in early 2022. A detainer has been lodged against him and it is filed under seal as Ex. 3. Mr. Rosales admits that was born in Honduras and has no legal status in this country.

Mr. Rosales admits that as part of his plea agreement that he was arrested three times in 2022 for possession and or transportation of illegal drugs for sale in San Francisco. Specifically, he was arrested on March 25, 2022; August 24, 2022, and September 6, 2022. He also admits he was arrested again on May 5, 2023, in San Francisco for possession of various drugs for sale, including fentanyl. All these cases were either dismissed or were pending in drug court at the time of his arrest in this case. Mr. Rosales missed his last court date that was set for January 12, 2024, because he was in federal custody on the charges in this case. He also admits that, at the time of his arrest in this case, he had a stay away order from the Eddy and Hyde Street area of the Tenderloin that was supposed to be in effect until March 29, 2025. See Ex. 4, filed under seal.

Moreover, as part of his plea in this case, the defendant admits to selling fentanyl and otherwise aiding and abetting the sale of fentanyl to two undercover law enforcement officers. Each delivery

involved approximately 60 grams of fentanyl. He was also dealing with others, and he admits that the money he had on him when he was arrested were drug proceeds. An Adjusted Offense Level of 19 and a Criminal History Category of I, results in a Guidelines range of 30 to 37 months.

### IV.   SENTENCING RECOMMENDATION

Consistent with the Plea Agreement in this case, the parties jointly request a sentence of time served plus one day and a three-year term of supervised release that includes a special condition that the defendant may not re-enter the Tenderloin during the period of supervised release. This stay-away condition is a critical component of the plea bargain because it prevents the defendant from returning to the Tenderloin, from where the defendant's conviction for drug trafficking arises. So too does the expanded search condition. The sentence should also include the imposition of the $100 mandatory special assessment, payable at once, and the forfeiture of his cell phone and US currency as set forth in the Plea Agreement.

**A.   Section 3553 Factors**

   1. *Nature and circumstances of the offense and history and characteristics of the defendant*

The defendant is a 25-year-old man who was born in Honduras and has been in this country illegally since at least early 2022. Together with another person (Seller A), he arranged and assisted in the sale of 120 grams of fentanyl in exchange for $800 to two undercover law enforcement officers and he also sold fentanyl to others while he was waiting for the deliveries to be completed. He also violated a stay away order and was not supposed to be involved with new cases, sales, or possession of drugs while in drug court.

Because of his conviction in this case, and the fact that he is pleading to a federal drug crime, he will now have been convicted of an aggravated felony that makes his deportation a virtual certainty. To facilitate that, a sentence of time served plus one day will allow him to be released directly from US Marshal custody in San Francisco to DHS custody.

This federal conviction carries a stiff penalty if he violates the terms of his probation in this case. First, he can be sentenced to prison for up to 2 years in addition to any new charges just for returning to the United States, especially in the next three years. Second, he can be charged with other

crimes, including a violation of 8 USC §1326 if he returns at any time without permission. Third, if he is caught selling drugs again, he will likely be subject to a much stiffer sentence in that next case that could include mandatory minimum sentences of 5 or even 10 years, even for the smaller quantities sold by street dealers.

This case arises out of the Defendant's arrest on December 21, 2023. He agrees that the following facts are true:

On or about December 21, 2023, at approximately 8:50 p.m., near the San Francisco Civic Center BART Station near 8th Street and Market Street in San Francisco, CA, Mr. Rosales participated in and assisted Seller A in the sale of 120 grams of fentanyl to two undercover law enforcement officers. He also admits that he used his cellphone to plan for this and other fentanyl deliveries. He agrees to forfeit the money he had at the time of his arrest and his cellphone.

In the Plea Agreement, the defendant acknowledges that he knew the substances being sold were fentanyl. He admits to possessing fentanyl with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and aiding abetting the sale of fentanyl in violation of 18 U.S.C. § 2. He also acknowledges that a conviction in this case "makes it practically inevitable and a virtual certainty that he will be removed or deported from the United States." Plea Agreement, ¶ 1

2. ***Need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant***

The Tenderloin, defined in the Plea Agreement to include the historic Tenderloin Neighborhood and much of the South of Market neighborhood, is in crisis. As the Court is aware, the proliferation of highly addictive, potent, and inexpensive synthetic controlled substances like fentanyl and methamphetamine has exacted a crushing human toll in the Tenderloin. The Tenderloin open-air drug market that now is less oppressive during the day but still potent especially at night not only creates suffering for its participants (including staggering amounts of overdoses and fatalities) but also dire externalities for the people and families who live and work in the Tenderloin, as well as for San Francisco itself. The effects of the defendant's offense, considered as an individual act, are destructive; the effects of the offense, considered in the aggregate, are catastrophic.

In this case, even given the controlled substances the defendant possessed, the adjusted Guidelines range for the defendant's conduct is 30-37 months. There are aggravating factors including his prior arrests and the fact that he was in drug court while he continued dealing and/or assisting others in dealing fentanyl.

Nevertheless, he is street dealer who likely would not have been charged federally absent this Initiative. The proposed sentence—of time served plus one day and a three-year term of supervised release with a search condition and a highly-restrictive geographic restriction—is a downward variance from the Guidelines range but one that the government submits is appropriate, although lenient. We recommend it because this case, while one that is part of the significant harm being caused to the Tenderloin Community, is still below the level of what we would normally consider a traditional federal case and yet it is one that needs to be addressed.

The Defendant is a serial street level dealer who needs to be removed from our community with an appropriate term of supervision and a stay away order that will be enforced if he violates its terms. Given the defendant's conduct and criminal history, the unique problem the Tenderloin faces, and the need for deterrence and protection of the public, he deserves to be punished with a federal conviction and with a far greater punishment potentially hanging over his head if he should violate any of the terms and conditions of his sentence in this case.

The defendant waived detention and has been in continuous custody since his federal arrest. The defendant agreed to promptly plead guilty and proceed to sentencing (including waiving indictment) within days of her arrest. He also agreed to be subject to a three-year term of supervised release that includes an expanded search condition and a strict stay-away condition from the Tenderloin. The defendant is on notice that a return to the Tenderloin (in violation of the defendant's supervised release terms) will invite new charges in addition to supervised release violations.

This disposition results in a federal drug trafficking conviction – an aggravated felony - within weeks of arrest (not months or years), immediate separation of the defendant from the Tenderloin, and prevention of the defendant from returning to the Tenderloin. The speed at which this case moved will free up other government resources to prosecute additional federal crimes, including in the Tenderloin.

The Defendant is also agreeing to forfeit the proceeds from his drug dealing on December 21, 2023, $730 and his cellphone that he used to arrange several of the deals.

### B. The Necessity of the Proposed Supervised Release Special Conditions

A three-year term of supervised release is required by statute for the drug-trafficking offense to which the defendant has agreed to plead guilty, 21 U.S.C. § 841(b)(1)(C), and it is essential to this disposition. In particular, the special stay-away condition of release allows the government to accomplish one of its primary goals related to protection of the public: to immediately separate drug traffickers from the Tenderloin (given the defendant has remained in custody from the time of arrest) and to effect a strict stay-away from the Tenderloin for three years. Under the terms of supervised release as contemplated herein, not only will the defendant be prohibited from engaging in any further unlawful conduct, but the defendant will be prohibited from entering the Tenderloin without prior approval by U.S. Probation:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Van Ness Avenue, on the north by Geary Street, on the east by Powell Street and 3rd Street, and on the south by Howard Street.

Combined with a suspicion less search condition, to which the parties have also agreed, Section 3553(a)'s goals of protection of the public, general and specific deterrence will be significantly advanced by the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained. The stay-away condition is also necessary given the particular circumstances of Tenderloin drug trafficking, where the Court has repeatedly encountered recidivism from previously sentenced defendants, including those who have been removed from the country but who nonetheless returned to sell controlled substances in the Tenderloin. *See, e.g.*, *United States v. Luis Almicar Erazo-Centeno*, 3:23-cr-00002-CRB; *United States v. Gamez-Arguilio*, 3:17-CR-00553-CRB. On the facts of this case, under the § 3553(a) factors and given the provisions of the Plea Agreement, the government respectfully submits that the contemplated disposition here is sufficient but not greater than necessary to accomplish the goals of § 3553(a).

## V.    CONCLUSION

For these reasons, the government recommends that the Court sentence the defendant to a sentence of time served plus one day, to be followed by a term of supervised release of three years and the special conditions agreed to by the parties in the Plea Agreement, including the stay-away and enhanced search conditions. The complete terms and conditions of the Defendant's probation are set forth below in Appendix A.

DATED: January 24, 2023,                                    Respectfully Submitted,


                                                            ISMAIL J. RAMSEY
                                                            United States Attorney


                                                             /s/ Jeffrey Bornstein
                                                            Jeffrey Bornstein
                                                            Assistant United States Attorney

Appendix A

## MANDATORY CONDITIONS

1) You must not commit another federal, state or local crime.

2) You must not unlawfully possess a controlled substance.

3) You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

4) You must cooperate in the collection of DNA as directed by the probation officer.

5) You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court, and bring about improvements in your conduct and condition.

1) You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of RELEASE, unless the probation officer instructs you to report to a different probation office or within a different time frame.

2) After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.

3) You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.

4) You must follow the instructions of the probation officer related to the conditions of supervision.

5) You must answer truthfully the questions asked by your probation officer.

6) You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with, for example), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

7) You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by these and the special conditions of your supervision that he or she observes in plain view.

8) You must work at least part-time (defined as 20 hours per week) at a lawful type of employment unless excused from doing so by the probation officer for schooling, training, community service or other acceptable activities. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.

9) You must not communicate or interact with someone you know is engaged in criminal activity. You must not associate, communicate, or interact with any person you know has been convicted of a felony, unless granted permission to do so by the probation officer.

10) If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.

11) You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.

12) You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).

If the probation officer determines that you pose a risk to a third party, the probation officer may require

you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

**SPECIAL CONDITIONS OF SUPERVISION**

1) You must cooperate in the collection of DNA as directed by the probation officer.

2) You must submit your person, residence, office, vehicle, electronic devices and their data (including cell phones, computers, and electronic storage media), or any property under your control to a search. Such a search shall be conducted by a United States Probation Officer or any federal, state or local law enforcement officer at any time with or without suspicion.  Failure to submit to such a search may be grounds for revocation; you must warn any residents that the premises may be subject to searches.

3) Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Van Ness Avenue, on the north by Geary Boulevard, on the east by Powell Street and 3rd Street, and on the south by Howard Street.